J-S83014-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| IN RE: ADOPTION OF: C.Z.M., S.M.M., AND T.L.M. | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: K.A.M. | : : : : : : | |
| | : | No. 1004 WDA 2018 |

Appeal from the Order Entered June 1, 2018
In the Court of Common Pleas of Westmoreland County
Orphans' Court at No(s): 141 of 2017,
142 of 2017,
143 of 2017

BEFORE: PANELLA, J., SHOGAN, J., and MUSMANNO, J.

MEMORANDUM BY PANELLA, J.                          FILED JANUARY 23, 2019

K.A.M. ("Mother") appeals from the orders entered June 1, 2018, which granted the petitions of W.A.W.[1] and M.L.A.W. (collectively, "Maternal Grandparents"), and terminated Mother's parental rights to her minor children, daughter C.Z.M. (born December 2011), son S.M.M., and daughter T.L.M. (both born December 2012) (collectively "Children"), pursuant to section 2511(a)(1), (2), and (b) of the Adoption Act, 23 Pa.C.S. § 2511.[2] We affirm.

_____

[1] W.A.W. is the stepfather of Mother, and has been married to M.L.A.W. since 1991.

[2] That same day, the court terminated the parental rights of M.M. ("Father"), who failed to appear at the hearing. Father has not separately appealed the termination of his parental rights and is not a party to the instant appeal.

Since 2011, Children have, for the most part, resided informally with Maternal Grandparents.[3]  N.T., 5/24/18, at 6, 21.  Mother lived in the house as well.  Id. at 24.  In the fall of 2013, Maternal Grandparents observed that Mother's behavior was becoming erratic and violent.  Id. at 7.  In March 2014, Maternal Grandmother found a syringe on the floor of Mother's bedroom.  Id. at 7-8.  This prompted her to search Mother's room, where she found stamped bags and burnt spoons containing drug residue.  Id.  Maternal Grandmother then checked her jewelry box, and discovered that all of her gold jewelry and her laptop was missing.[4]  Id.

Subsequent to these discoveries, Maternal Grandparents obtained a protection from abuse ("PFA") order against Mother, and filed a complaint in custody for Children.  Id. at 7-8.  On May 28, 2014, Maternal Grandparents were granted sole legal and primary physical custody of Children.  Id. at 6, 21.  Mother was permitted supervised partial physical custody of Children every Saturday from noon until 5:30 p.m. at the sober living home where she was residing.  See Pet. Ex. 1.

Father has had no contact with Children or Maternal Grandparents since May 23, 2014.  N.T., 5/24/18, at 12, 23-24.  Mother visited with Children two

_____

[3] For approximately six weeks, Children lived with Mother in Philadelphia.  Id. at 24, 39.

[4] A police investigation later confirmed that Mother had stolen the jewelry and was selling it at pawn shops.  Id. at 8.  Additionally, Mother was selling other items and jewelry that did not belong to Maternal Grandmother.  Id.

times at the sober living home, checked herself out of the home, and disappeared. Id. at 16. Mother made no attempt to call Maternal Grandparents regarding Children. Id. at 9, 25-26.

Subsequently, Mother made few attempts to see Children. Id. at 16-17. Her contributions to the family were buying groceries occasionally. Id. at 11, 22. Mother never sent cards or gifts to Children for birthdays, Christmas, or any other occasion. Id. at 9. She has not performed any parental duties since May 2014. Id. at 9, 11-12, 22. In 2015, Mother visited Maternal Grandparents' home for approximately fifteen minutes; this was also the last time Mother saw Children in person. Id. at 5, 25. In May or June 2016, Mother went to Maternal Grandparents' home with the intent of seeing Children. Id. at 17-18, 21. Maternal Grandfather would not allow her in, citing the custody order. Id. at 18, 21, 25-26. The last time Maternal Grandmother saw Mother was in November 2017, at a Wal-Mart. Id. at 10. Mother asked how Children were doing, but left the store shortly thereafter. Id.

On December 22, 2017, Maternal Grandparents filed petitions seeking to involuntarily terminate the parental rights of Mother and Father so that they could adopt Children. The court convened hearings on the petitions on May 24, 2018. Maternal Grandparents, represented by counsel, testified.[5] Mother,

_____

[5] Father was served by alternate means of service, but did not attend the termination hearing.

- 3 -

represented by counsel, testified on her own behalf. Children were represented by a guardian ad litem and by legal counsel.

Maternal Grandparents testified that they love Children and wish to provide them with a steady, stable home life. Id. at 14, 22-23. Children refer to Maternal Grandparents as "Mommy" and "Daddy." Id. at 14. Maternal Grandparents denied threatening to call the police if Mother attempted to visit unannounced. Id. at 17-18, 25-26.

Mother claimed to have begun employment in a restaurant one day prior to the hearing, but did not verify her employment. Id. at 28, 34-35. Mother was enrolled in the accelerated rehabilitative disposition ("ARD") program in Westmoreland County and anticipated that she would be finished in the end of June 2018. Id. at 28. Mother testified that in 2014, she left the sober living home and moved in to her boyfriend's house, and claimed Maternal Grandparents brought Children to visit her there. Id. at 29. Mother claimed she had tried to call and text Maternal Grandparents every day for two years, but had stopped after receiving no response. Id. at 31. Mother admitted she did not bring and did not have copies of phone logs or text messages. Id. at 34.

Mother claimed she went to Maternal Grandparents' house in May 2016 because they had ceased all communication with her, and that Maternal Grandfather had threatened to call the police on Mother. Id. at 30. Mother also claimed that Maternal Grandmother told Mother she had warned the neighborhood to call the police if Mother showed up again. Id. at 30-31.

Children's legal counsel, Kelly Eshelman, Esquire, reported Children are happy, healthy, and wish to remain with Maternal Grandparents, whom they view as their mother and father. Id. at 41-41. They do not demonstrate any emotional bond to Mother; the oldest Child, C.Z.M., stated she would like to see Mother occasionally as a friend. Id. at 42. The youngest children, S.M.M. and T.L.M., do not identify Mother as a significant person in their lives. Id. Additionally, Children's guardian ad litem, Leslie Uncapher, Esquire, noted that she observed Children in Maternal Grandparents' home and they are happy to be there and show no indication of having any bond with Mother. Id. She believed it was in the best interests of Children to be adopted by Maternal Grandparents. Id. at 43.

On June 1, 2018, the court issued an order terminating Mother's parental rights involuntarily. On June 5, 2018, Mother filed a notice of appeal[6] and a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).

On appeal, Mother raises a single issue for our review:

_____

[6] On June 1, 2018, the Pennsylvania Supreme Court published Commonwealth v. Walker, 185 A.3d 969 (Pa. 2018), holding that "in future cases [Pa.R.A.P.] 341(a) will, in accordance with its Official Note, require that when a single order resolves issues arising on more than one lower court docket, separate notices of appeal must be filed. The failure to do so will result in quashal of the appeal." Id. at 977. In the instant matter, a separate trial court docket exists for each child, although the trial court entered the same order, containing all three docket numbers in the caption, on each docket. As the order resolved issues on multiple dockets, the proper procedure would have been for Mother to file separate notices of appeal as to each Child. However, as no party was prejudiced by this procedural misstep and in the interest of judicial economy, we decline to quash in this instance.

I. Whether the trial court erred by finding clear and convincing evidence that the Maternal Grandparents met their burden under 23 Pa.C.S. § 2511(b)?

See Mother's Brief at 4.

We review cases involving the termination of parental rights according to the following standards.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record.  If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion.  A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will.  The trial court's decision, however, should not be reversed merely because the record would support a different result.  We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

In re T.S.M., 71 A.3d 251, 267 (Pa. 2013) (internal citations and quotations omitted).

Termination requires a bifurcated analysis:

> Initially, the focus is on the conduct of the parent.  The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a).  Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.  One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

In re L.M., 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). As Mother does not challenge that grounds for termination existed under 23 Pa.C.S. § 2511(a), see Appellant's Brief, at 4, we focus our analysis on 23 Pa.C.S. § 2511(b).[7]

Essentially, Mother argues the evidence did not support a finding that termination was in Children's best interests, because there was evidence of a bond between Children and Mother. See Mother's Brief at 10. She argues that the court did not conduct an analysis to determine whether terminating Mother's rights would destroy an existing, necessary, and beneficial relationship, and that a bonding assessment was not performed. Id. at 10-11. Mother avers that because Children lived with Mother since their birth until 2014; because Mother twice visited with Children while she was in a halfway house; and because the Children are not opposed to seeing Mother, the facts of this case support that a bond existed. Id. at 10.

The statute provides:

> (b) Other considerations.--The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant

---

[7] Mother raised challenges to the Section 2511(a) findings in her Rule 1925(b) statement, but has abandoned them on appeal. See Krebs v. United Refining Co. of Pennsylvania, 893 A.2d 776, 797 (Pa. Super. 2006) (noting that where an appellant does not preserve her issue by raising it in her concise statement of errors complained of on appeal, that issue is waived on appeal).

to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511.

Accordingly, we consider whether Child's needs and welfare will be met by termination pursuant to Subsection (b). In re Z.P., 994 A.2d 1108, 1121 (Pa. Super. 2010). "In this context, the court must take into account whether a bond exists between child and parent, and whether termination would destroy an existing, necessary and beneficial relationship." Id. The court is not required to use expert testimony, and social workers and caseworkers may offer evaluations as well. Id. Ultimately, the concern is the needs and welfare of a child. Id.

We have stated:

[b]efore granting a petition to terminate parental rights, it is imperative that a trial court carefully consider the intangible dimension of the needs and welfare of a child—the love, comfort, security, and closeness—entailed in a parent-child relationship, as well as the tangible dimension. Continuity of the relationships is also important to a child, for whom severance of close parental ties is usually extremely painful. The trial court, in considering what situation would best serve the child[ren]'s needs and welfare, must examine the status of the natural parental bond to consider whether terminating the natural parents' rights would destroy something in existence that is necessary and beneficial.

Z.P., 994 A.2d at 1121 (quoting In re C.S., 761 A.2d 1197, 1202 (Pa. Super. 2000)). The trial court may equally emphasize the safety needs of the child and may consider intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. See In re N.A.M., 33 A.3d 95,

- 8 -

103 (Pa. Super. 2011). Additionally, the court may emphasize the safety needs of a child. See In re K.Z.S., 946 A.2d 753, 763 (Pa. Super. 2008). Where there is no evidence of a bond between the parent and child, it is reasonable to infer that no bond exists. Id. "[A] parent's basic constitutional right to the custody and rearing of . . . her child is converted, upon the failure to fulfill . . . her parental duties, to the child's right to have proper parenting and fulfillment of [the child's] potential in a permanent, healthy, safe environment." In re B.,N.M., 856 A.2d 847, 856 (Pa. Super. 2004) (internal citations omitted).

> Here, the trial court found as follows:

> [T]he children do not demonstrate any emotional bond with their Mother. [C.Z.M.] said that she would like to see her birth mother occasionally as a friend. The other two children, due to the young age at which they last had contact with their mother, do not identify Birth Mother as a significant person in their lives . . . Birth Mother [has] made no progress with parenting and developing a healthy emotional attachment to the children.

See Order, 6/1/18, at 6-7. In so finding, the court concluded that it was in Children's best interests if Mother's parental rights were terminated.

The trial court's findings are supported by the record, and Mother's arguments that a bonding assessment should have been conducted are unavailing. Initially, we note that Mother never requested that such an assessment be performed. Secondly, no such assessment is required, and where there is no evidence of a bond, it is reasonable to infer that no bond exists. Z.P., 994 A.2d at 1121; K.Z.S., 946 A.2d at 763.

Despite Mother's assertions that there was a bond because she had lived with Children in Maternal Grandparents' home for approximately two years, and in Philadelphia for approximately six weeks, the record did not reflect that this was the case. Rather, it showed that Mother had had little to no contact with Children for the last three years. The oldest Child seems ambivalent to seeing Mother, and views her more as a "friend" than a parent. The youngest Children do not see mother as a "significant person" at all, and do not have a relationship with her. Accordingly, the record did not reflect that there was any bond between Mother and Children, and no evidence that terminating Mother's parental rights would sever an existing beneficial relationship or cause irreparable harm to Children. K.Z.S., 946 A.2d at 764. On the contrary, there is a strong, loving, and beneficial bond between Children and Maternal Grandparents, who have cared for them for the majority of their lives.

Thus, on this record, clear and convincing evidence supports the trial court's termination of Mother's parental rights. The evidence supports a finding under subsection (b) that termination would sever an existing, beneficial relationship with Mother, or that termination would harm Children. 994 A.2d at 1126-27; K.Z.S., 946 A.2d at 763. Accordingly, we affirm the trial court's orders.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/23/2019